NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ICHL, LLC**
**(DOING BUSINESS AS INTELLECTUAL CAPITAL HOLDINGS LIMITED),**
*Plaintiff-Appellant,*

v.

**SONY ELECTRONICS, INC.**
*Defendant-Appellee,*

**and**

**LENOVO, INC.**
*Defendant-Appellee.*

---

2011-1202

---

Appeal from the United States District Court for the Eastern District of Texas in Case No. 08-CV-0065, Judge David J. Folsom.

---

Decided: December 22, 2011

---

ERIC T. STAHL, Law Offices of Frank L. Branson, P.C., of Dallas, Texas, argued for plaintiff-appellant.

KEVIN P.B. JOHNSON, Quinn, Emanuel Urquhart & Sullivan, of Redwood Shores, California, argued for both defendants-appellees. With him on the brief was TODD M. BRIGGS. Of counsel on the brief for defendant-appellee Lenovo, Inc., were LUKE L. DAUCHOT and SHARRE LOTFOLLAHI, Kirkland & Ellis, LLP, of Los Angeles, California.

———————————

Before LOURIE, SCHALL, and PROST, *Circuit Judges*.

LOURIE, *Circuit Judge*.

ICHL, LLC ("ICHL") appeals from the district court's judgment of noninfringement in favor of Sony Electronics, Inc. and Lenovo, Inc. ("Defendants"). In this appeal, ICHL challenges the district court's conclusion that elements of the claimed "heat sink assembly" must be separate parts. Because the district court did not err in construing the claims, we *affirm*.

BACKGROUND

I.

This patent case relates to heat sinks that are used to dissipate heat and cool electronic components such as microprocessors. ICHL owns U.S. Patent 4,884,631 ("the '631 patent"), which relates to a heat sink assembly. Figure 1 of the '631 patent, reproduced below, depicts the patented heat sink assembly, in which two "fin structures" (labeled 16 and 18) are affixed to a surface of the "top plate" (labeled 12):



FIG. 1

The central dispute in this case is whether the "top plate" and "fin structures," as claimed, must be structurally distinct. Claim 2, reproduced below, is representative, listing the "top plate" and "fin structures" as separate elements, in which the fin structures are "bonded" to a surface of the top plate:

2. A heat sink assembly of the type receiving an electrical component in in intimate engagement for dissipating heat generated by such component, such heat dissipation being promoted by forced air flow through the assembly; the assembly comprising:

a *top plate* having a first surface for receiving said component and a *second surface for receiving fin structures*;

a plurality of fin structures each bonded to said second surface of said top plate and extending therefrom;

at least two of said fin structures being in relative spaced relation to form an air inlet path therebetween whereby an air flow into said inlet between said two fin structures is divided, with a respective portion of said air flow being directed through each of said two fin structures; and

a cover plate partially enclosing said fin structures and having an opening adjacent said air inlet;

wherein said top plate is of a rectangular shape and each of said fin structures is of an elongated rectangular shape.

'631 patent, col.7 l.37–col.8 l.8 (emphases added). Other claims refer to the heat sink assembly as comprising, in place of the "top plate," a "thermally conductive planar member," in which the "fin structures" are "in intimate contact with" a surface of the "thermally conductive planar member." *Id*. col.8 ll.9–21.

The written description of the '631 patent discusses these claimed features of the invention. It discloses fin structures that are affixed to, bonded to, or mounted on a surface of the top plate. *Id*. col. 4 ll.12–39. To achieve that connection, the specification discloses that a high thermal conductivity bondant, such as metal-filled epoxy, may be utilized. *Id*. Abstract. In addition, "[d]ip brazing and soldering may also be employed depending on the materials used." *Id*.

The written description also characterizes prior art extruded heat sinks. In particular, it explains that "conventional extruded structures have prevailed where fin thickness, spacing, and orientation are all constrained to non-optimal values." *Id*. col. 1 ll.38–42. The "net result,"

according to the written description, is that those ex-truded heat sinks are "often ten-fold more massive than their ideal counterparts." *Id.* col.1 ll.42–44.

## II.

ICHL filed suit against Defendants in 2008, alleging infringement of each of the '631 patent's claims. In the course of the litigation, the district court construed a number of claim limitations. Central to this appeal, the district court concluded that the claims required the "top plate" (or "thermally conductive planar member") to be structurally distinct from the "fin structures." Order, *ICHL, LLC v. NEC Corp.*, No. 5:08-CV-0065 (E.D. Tex. Sept. 20, 2010), ECF No. 115, at 6–12 ("*Claim Construction Op.*").

The district court based its conclusion on three grounds. First, the plain language of the claims requires the "top plate" to include a "second surface for receiving fin structures," in which the fin structures are "bonded to said second surface." *Id.* at 7. Those limitations, reasoned the district court, counseled towards concluding that the claims did not cover extruded or integrally bonded heat sinks. *Id.* Second, the district court concluded that "the specification repeatedly describes the fin structures as 'bonded' or 'mounted' to the top plate," which supported the district court's interpretation of the plain claim language. *Id.* at 8–9. Finally, the district court concluded that "the inventor disparaged the ex-truded structures of the prior art as being unable to achieve optimal parameters," and, while that statement in the written description by itself may not have dis-claimed claim scope, "taken in conjunction with the claims and remaining specification, it is clear that extruded structures were not within the scope of the patent." *Id.* at 9.

After the district court entered its claim construction, the parties stipulated that the accused devices did not infringe the asserted claims of the '631 patent. The district court thereafter entered a final judgment against ICHL, from which ICHL timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

ICHL appeals the district court's claim construction. We review a district court's claim construction *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–55 (Fed. Cir. 1998) (en banc). To ascertain the scope and meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and, if necessary, any relevant extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315–17 (Fed. Cir. 2005) (en banc).

ICHL asserts that the district court erroneously construed the asserted claims to exclude "integrally bonded" heat sinks. First, ICHL argues that the plain claim language does not exclude or disavow integrally bonded heat sinks. In addition, ICHL points to the specification's disclosure of "dip brazing" as supporting its claim construction. Finally, ICHL argues that the district court's construction improperly imports process limitations into the claims, which claim an apparatus.

We disagree. The claim language supports the district court's construction. Claim 2 plainly recites that the "top plate" and "fin structures" are separate elements of the "heat sink assembly," in which the top plate contains a surface "for receiving fin structures," and hence not integrally bonded. Secondly, the claim delineates that the fin structures are "bonded to" the second surface of the top plate. When one structure is bonded to a second structure, those structures are plainly separate to begin

with and are not integrally bonded. They are bonded, as the specification states, by a bondant such as metal-filled epoxy. '631 patent, Abstract. Similarly, claim 3 recites that the fin structures are in "intimate contact with" a surface of a "thermally conductive planar member." That language conveys to those of skill in the art that those elements are separate pieces joined together, not separate portions of a single, integrally formed structure.

The written description is consistent with the plain language of the claims. As recounted above, the written description disparages prior art extruded heat sinks as being unable to achieve optimal parameters. *Id.* col. 1 ll.38–44. In contrast, it discloses that the patented heat sink assembly contains fin structures that are bonded to, affixed to, or mounted on a surface of the top plate. *Id.* col. 4 ll.12–39.

To counter that disclosure, ICHL points to the Abstract's listing of "dip brazing" as a means to affix the fin structures to the top plate. ICHL argues that the district court erred because its construction does not encompass "dip brazed" heat sinks, which, according to ICHL, are "integrally bonded." Opening Br. ICHL, LLC at 30, 2011 WL 2603943. However, as the district court correctly concluded after reviewing the record, "a person of ordinary skill in the art would consider dip brazing akin to soldering or use of other bondant to join two separate pieces." *Claim Construction Op.*, at 11. Thus, the district court's construction does not exclude from the scope of the claims heat sink assemblies whose parts are joined by "dip brazing."

Finally, contrary to ICHL's arguments, the district court's claim construction does not improperly link the claimed heat sink assemblies to the process made to manufacture those structures. The court's construction

does not require the components of the heat sink assembly to be joined in a specific manner, whether by dip brazing, soldering, or another process. Instead, the district court's construction addresses the structural relationship between the claimed elements and excludes from the scope of the claims a specific type of structure—extruded or integrally bonded heat sinks. *See Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 243 F.3d 1370, 1372 (Fed. Cir. 2000) (affirming claim construction of apparatus claim that "describe[d] the relationship between" the claimed elements, not "the means of joining them"). In sum, we conclude that the district court did not err in construing the "top plate," "bonded to said second surface," "thermally conductive planar member," and "in intimate contact with said second surface" limitations. Because the parties stipulated to noninfringement under those constructions, we affirm the district court's judgment against ICHL.

CONCLUSION

We have considered ICHL's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is

**AFFIRMED**